In the Matter of the Petition of JOHN Q. A. HENRY, Appellant, for an Order Revoking and Canceling Liquor Tax Certificate No. 9,910, Issued to FRANK E. MORAN, Respondent.

*Liquor tax certificate — the offense of obstructing the view into the saloon from the street requires the court to cancel it.*

*Semble,* that a charge that the keeper of a liquor saloon, between the hours of one and five o'clock A. M., on a certain Sunday in May, "did have, keep and maintain screens, blinds, curtains, articles and things covering a part of each window of the room at said premises where liquors were sold and kept for sale, and did have, keep and maintain in the windows and doors of said premises opaque and colored glass, all of which and each of which obstructed and prevented a person passing from having a full view from the sidewalk, alley and road in front of and from the side and end of said building of a part of the bar and room, and of the whole thereof in said building where liquors were sold and kept for sale," in violation of subdivision h of the 31st section of the Liquor Tax Law (Laws of 1896, chap. 112), if sustained by satisfactory proof, requires the court to vacate and cancel the liquor tax certificate held by the keeper of such liquor saloon.

APPEAL by the petitioner, John Q. A. Henry, from an order of the Supreme Court, made at the New York Special Term and

entered in the office of the clerk of the county of New York on the 10th day of September, 1900, denying the petitioner's motion to cancel a liquor tax certificate issued to Frank E. Moran, and also from a judgment entered in said clerk's office on the 15th day of October, 1900, upon the said order.

*Royal R. Scott*, for the appellant.

*Edwin F. Stern*, for the respondent.

PER CURIAM:

This proceeding was brought to revoke and cancel a liquor tax certificate issued to Frank E. Moran, who carried on business at No. 501 Sixth avenue, New York city, upon which premises he kept an hotel with which was connected a barroom. The petitioner Henry, a citizen of New York, describing himself as superintendent of the New York Anti-Saloon League, made charges against Moran of violations of the Liquor Tax Law, which charges are specifically set forth in a petition in due form. That petition was, by direction of the court, served upon Moran and the special deputy commissioner of excise for the boroughs of Manhattan and the Bronx. Moran answered it and directly denied some, and on information and belief others, of the charges made against him. The special deputy commissioner of excise also answered, stating that he had not sufficient knowledge or information to form a belief as to the allegations of the complaint relating to the alleged violations of law by Moran. On the petition and the answers an order of reference was made to take proof, and such proofs were taken by the referee named in the order; they were reported to the court, and the whole matter coming up for hearing, the justice at Special Term denied the motion to cancel the liquor tax certificate, and directed that the costs of the proceeding be paid by the petitioner Henry. It appeared in the proofs that Moran kept an hotel at No. 501 Sixth avenue, with fifteen sleeping rooms, but that he entertained male guests only. He and his family resided in the house; he employed seventeen servants and apparently conducted a respectable establishment. Two witnesses testified in support of the charges that liquor was sold on the premises on Sundays and at forbidden hours during the week. They were flatly contradicted, and the justice at Special Term remarked that

he could not hold that the preponderance of proof was with the petitioner touching those alleged violations. That remark applied to every charge made in the petition of Henry, with one exception, and that is the charge numbered fifth in such petition, which reads as follows: That Moran, " on the 3rd day of May, 1900, between the hours of one and five o'clock A. M., and on Sunday, the 6th day of May, 1900, * * * did have, keep and maintain screens, blinds, curtains, articles and things covering a part of each window of the room at said premises where liquors were sold and kept for sale, and did have, keep and maintain in the windows and doors of said premises opaque and colored glass, all of which and each of which obstructed and prevented a person passing from having a full view from the sidewalk, alley and road in front of and from the side and end of said building of a part of the bar and room, and of the whole thereof in said building where liquors were sold and kept for sale."

That charge was founded upon subdivision " h " of the 31st section of the Liquor Tax Law (Laws of 1896, chap. 112), which provides that it shall not be lawful " to have during the hours when the sale of liquor is forbidden any curtain, screen or blinds, opaque or colored glass that obstructs the view from the sidewalk, alley or road in front of or from the side or end of the building of the bar or place in such building where liquors are sold or kept for sale."

The testimony in support of this charge is somewhat vague as to the third of May, but there were two witnesses called by the petitioner who swore that on Sunday, the 6th of May, 1900, between the hours of four and six P. M., they could not see from the street into the barroom from any point on Sixth avenue or on the side street; and one of them (Sandford) swears that his view was obstructed by wooden cabinet work in a window on Sixth avenue, which extended above the height of a man's head, and that in the front window there were bottles and that he could not see in the barroom in any way; that he tried every way and could not see. Another witness (Booth) testified that he could not see into the interior of the barroom from any point; that he could not see inside the window or door at any point. What efforts these men made to see in are only generally mentioned. There was evidence on the part of Moran to show that this cabinet work in the window was so con-

structed that the barroom could be seen. There were no curtains or shades in this window, but there were panels. It was shown that Moran's instructions to his servants were to remove those panels during prohibited hours; and there was also evidence to show that the interior of the barroom could be seen at all times from the side street. Although this charge is a technical one, yet upon satisfactory proof of its violation it would be the duty of the court to revoke this license, for the value of the prohibitory provisions of this statute depends altogether upon their rigid enforcement. But the evidence to sustain a technical charge of this character ought to be such as to satisfy the judgment and the conscience of the court.

There is no reason to doubt the truth of the statement of Moran and his witnesses as to the instructions given respecting the exposure of the bar to observation from the street during prohibited hours and the constant compliance with the requirement of the law in that respect. Naturally his servants could not testify to a particular hour on a particular date long passed, but they could testify to general conditions which would indicate that had the petitioner's witnesses made proper examination they could have seen into the barroom on the occasions upon which they testified that it was screened from observation.

The justice at Special Term evidently was not satisfied with the sufficiency and conclusiveness of the testimony of the witnesses in support of this charge. He was authorized on the whole evidence to reject their story, and, under the circumstances of the case, we do not feel called upon to reverse his decision.

The order appealed from is, therefore, affirmed, with costs.

Present — VAN BRUNT, P. J., RUMSEY, PATTERSON, O'BRIEN and McLAUGHLIN, JJ.

Order affirmed, with costs.