[S. F. No. 14761. In Bank.—July 13, 1933.]

VERNON CHARLES LE CLERG et al., Petitioners, v. CITY OF SAN DIEGO (a Municipal Corporation) et al., Respondents.

Sanders & Jacques for Petitioners.

C. L. Byers, City Attorney, and H. B. Daniel and Gilmore Tillman, Assistants City Attorney, for Respondents.

THE COURT.—Petition for mandate to compel the Auditor and Controller of the City of San Diego to issue warrants to the petitioners for the full amount of judgments held by them against said city. It is alleged in substance in the petition that on or about the nineteenth day of December, 1927, the San Diego common council duly passed an ordinance numbered 11497, providing for the employment of special deputy engineers in the operating department of said city, prescribing their duties and fixing their compensation; that this employment was created in order to perform a large volume of street improvement work. The ordinance creating these positions provided that the appointments be made from the eligible civil service list. The petitioners were thereafter duly appointed and certified to the positions held by them by the common council and their duties were designated by resolution of said council. It is then alleged that they performed the preliminary work leading up to the improvements, but before the same had progressed to award of contract therefor, the city, through its council, abandoned all the proceedings. Thereafter, the petitioners filed actions against the city for their compensation. Their complaints were demurred to and the demurrers were overruled. The city then answered.

Thereafter, the council passed a resolution wherein it was recited that the total amount sought to be recovered in said actions was $125,000; that the superior court had decided that the plaintiffs were entitled to recover the reasonable value of their services; that the further defense by the city of said actions would entail great additional costs, and probably result in judgments against it in excess of $67,500; that the city deemed said sum to be a reasonable

amount to pay the special engineers for their services. This resolution directed the city attorney to consent to the entry of judgments against the city for said sum of $67,500. It is then alleged that pursuant to said resolution the city attorney entered into a stipulation in said actions, consenting to the entry of judgments against the city in favor of the petitioners herein, in respective sums aggregating the above amount. This stipulation provided that the judgments so entered should be as binding and effective as though entered by the court after a full trial of each of the actions on the merits, and that any right of the parties to appeal therefrom should be deemed waived. All the judgments were thereupon made and entered and they have become final.

The petitioners allege that the clerk of the court then filed with the council and the auditor of the city a certificate and audit of said judgments. Further allegations are to the effect that there is sufficient money in the treasury to pay the judgments, but notwithstanding this fact the city refuses to pay and the auditor refuses to issue his warrant therefor. The petition also recites that in incurring the obligation to pay the petitioners compensation for their services out of the city treasury in conformity with the terms of the ordinance, the city did not incur any indebtedness or liability exceeding the income and revenue provided for the year in which said obligations were incurred. The judgments here involved are based upon obligations accruing variously in the fiscal years 1929–1930 and 1930–1931. Furthermore the petitioners advance the theory that the obligations upon which the judgments are based are statutory in character and that section 18 of article XI of the Constitution, limiting the power of legislative bodies of municipalities to incur indebtedness or liability in any manner or for any purpose exceeding in any year the income provided for such year, has application to contractual obligations alone and has no reference to obligations statutory in character.

Even if this be true, and assuming for the purposes of this case that the obligations are statutory, it does not follow that the petitioners are entitled to the specific relief sought, viz., the issuance of warrants on existing funds of the city for the full amount of said judgments.

■ It is the position of the respondents that a writ of mandate will not lie to compel the municipality to pay a judgment prior to the levy of a tax for that purpose pursuant to the provisions of the act of the legislature, approved March 23, 1901, entitled: "An act to provide for the payment of judgments against counties, cities, cities and counties, and towns" (Stats. 1901, p. 794). Section 3 provides: "It shall be the duty of the auditor to examine and audit the final judgments so reported by the county clerk, and to certify the amount of such final judgments to the treasurer within five (5) days from the day on which such list of final judgments is filed with him. Thereupon, the board of supervisors, city council, town trustees, or other board of officers, as the case may be, having authority to levy taxes upon the taxable property of such county, city and county, city, or town, must include in the tax levy for the next fiscal year a rate or sum sufficient to pay all final judgments existing against such county, city and county, city, or town. The omission to include the amount of any existing final judgment in the tax levy for any year, shall not of itself invalidate the tax levy as made, but such omission or omissions must be included in the next tax levy; *provided,* that the board of supervisors or other board of officers having authority to levy taxes may provide for the payment of such final judgments when so audited by including in the tax levy for the next fiscal year an aliquot part or fraction of the amount of such judgments, and thereupon the treasurer shall pay to each judgment creditor a like aliquot part or fraction of the amount of the judgment of the creditor, and thereafter a like aliquot part or fraction of the amount of such judgments shall be levied and paid each successive year until the whole thereof shall be fully paid; but such fractional levy and payment shall in no case be less than one tenth (1/10) of the whole amount of such judgments."

The plain intent of the statute is that the municipality after the rendition of the judgment shall have a proper time in which to raise the money by taxation for its payment. Prior thereto the funds of the city are to be used to pay statutory, necessary and usual charges provided for in the budget. A writ issued during the fiscal year, compelling the payment of judgments out of the operating funds

on hand, might impair the operation of the city, for it is conceivable that a municipality might incur a liability far in excess of the amount of funds of the city's income during the year in which the judgments were obtained. The case of the *City of Long Beach* v. *Lisenby*, 180 Cal. 52 [179 Pac. 198], affords an example of just such a situation. The statute clearly contemplates that judgments against municipalities are not enforceable until after an annual tax has been levied and collected therefor. (*Frederick* v. *City of Gloversville*, 112 App. Div. 146 [97 N. Y. Supp. 1105].) ▇▇ Where the funds in a city treasury are raised for other purposes, the remedy of a judgment creditor against the city is to proceed under the statutory provision for the collection of judgments. (*Griswold* v. *Common Council of City of Ludington*, 117 Mich. 317 [75 N. W. 609].) This has been the practice followed in this state. (*Cary* v. *Long*, 181 Cal. 443 [184 Pac. 857]; *Cook* v. *Board of Supervisors*, 99 Cal. App. 169 [277 Pac. 1064]; *Palace Hotel Co.* v. *Board of Supervisors*, 58 Cal. App. 742 [209 Pac. 256]; *Metropolitan Life Ins. Co.* v. *Deasy*, 41 Cal. App. 667 [183 Pac. 243].)

▇▇ A petition for a rehearing after an order denying the peremptory writ was granted because of the insistence of the petitioners that the method prescribed by law for the payment of debts of the municipality is set forth in the charter of the city; that such a matter is a municipal affair, and that the act of 1901 is not controlling nor even available to the city in the premises. It is pointed out that section 74 of the charter (Stats. 1931, p. 2889) provides a method for appropriations to satisfy debts of the city by the inclusion thereof in the annual appropriation ordinance, or in the absence thereof, by an appropriation account set up by the auditor and controller. It is insisted that the method thus provided is exclusive and uncontrolled by the general law. Assuming that the term "debt" as employed in section 74 of the charter would include a judgment debt, and that the method therein provided for making an appropriation to satisfy the same is a municipal affair, it does not necessarily follow that such method is exclusive. It is true that by that portion of section 2 of the charter which is quoted by the petitioners the city has, in general terms, availed itself of the right and power to make and enforce all laws and regulations in respect to

municipal affairs, subject only to the restrictions and limitations provided in the charter. But the concluding part of the section provides that ''nothing herein shall be construed to prevent or restrict the city from exercising or consenting to, and the city is hereby authorized to exercise any and all rights, powers and privileges heretofore or hereafter granted or prescribed by general laws of the state''.

By the enactment of the charter provisions just quoted the city has been placed in position to avail itself of the rights and privileges extended by general laws. The act of 1901 is such a law, and the attitude of the respondents in this proceeding must be held to constitute an election on the part of the city to be governed thereby in the matter of the payment of said judgments. It is unquestionably the right of the city so to do. Under these circumstances the most that the petitioners may lawfully demand is that the city proceed to levy a tax for the purpose of satisfying said judgments as provided in the statute. All of the steps preliminary to the levy of the tax for that purpose have been taken. The last step to that end was the audit and certification, on July 19, 1932, by the auditor and controller to the city treasurer of the amounts of said judgments. The common council adopted the tax ordinance on or before the last Tuesday in August, 1932, as provided in section 75 of the charter, but failed to include therein a levy for the payment of said judgment or an aliquot part thereof. Assuming that the common council should have done so, the petition does not disclose that any request was made by the petitioners that such be done, and for the obvious reason that the petitioners were then demanding that the full amount of the judgments be paid by warrants on existing funds in the city treasury.

When the alternative writ herein was made returnable, to wit, December 6, 1932, it was too late to afford the petitioners any relief for the tax year 1932–1933 under their prayer for general relief, and the time for the levy of the tax for the year 1933–1934 has not arrived. The respondents insist that it may not be assumed that they will not perform their duty in the premises in fixing a tax levy in accordance with the act of 1901 and on or before the last Tuesday in August, 1933. This attitude of the respondents

renders the issuance of the peremptory writ at this time inappropriate and unnecessary.

The peremptory writ is therefore denied without prejudice.

Rehearing denied.